Karra J. Porter, 5223
Karra.Porter@chrisjen.com
Anna P. Christiansen, 17518
Anna.Christiansen@chrisjen.com
CHRISTENSEN & JENSEN, P.C.
257 East 200 South, Suite 1100
Salt Lake City, Utah  84111
Telephone: (801) 323-5000
*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UTAH ANIMAL RIGHTS COALITION, a non-profit corporation; DIRECT ACTION EVERYWHERE SF BAY AREA, an unincorporated association; CURTIS A. VOLLMAR, an individual; ALEXANDER J. TAYLOR, an individual; and MAXWELL J. CORWIN, an individual;<br><br>Plaintiff,<br><br>v.<br><br>BEAVER COUNTY, a political subdivision; CAMERON NOEL, an individual; WARREN G. WOOLSEY, an individual; and LONNIE LAWS, an individual;<br><br>Defendants. | **PLAINTIFFS' MOTION TO SUPPLEMENT RECORD WITH LEASE AGREEMENT**<br><br><br>Civil No. 2:22-cv-00497-JNP-DBP<br><br>Judge Jill N. Parrish<br><br>Magistrate Judge Dustin B. Pead |

Plaintiffs hereby move the Court for leave to supplement the record on Plaintiffs' Motion for Preliminary Injunction with the lease agreement governing Main Street Park that was referenced during the evidentiary hearing herein.

During the evidentiary hearing, defendants focused on events that allegedly took place in the Main Street Park in Beaver. Defendants argued that the Main Street Park is owned by The Church of Jesus Christ of Latter-day Saints ("LDS Church") and therefore Plaintiffs had no right to attempt outreach there. Plaintiffs took the position (and still do) that alleged earlier events in the park are immaterial to their request for preliminary injunction, which is limited to public sidewalks. However, Plaintiffs have now received a document that was referenced by during the hearing, which clarifies (or modifies) some of the testimony therein.

At the preliminary injunction hearing, there was extensive testimony about a "lease" governing the Main Street Park. During their case-in-chief, defendants called a local LDS Church official, Lance Smith, to testify that the park is owned by the Church. During direct examination, Mr. Smith said he was familiar with ownership of the park because "I have a lease agreement that's been since 2009." The following exchanges subsequently occurred:

> CROSS-EXAMINATION BY MS. PORTER
>
> Q Okay. You made a reference to a lease agreement. What did you mean by that?
> A That's actually probably not in reference to this. That's a lease agreement between the church and the city to take care of the property.
> Q Okay. So the parties to that lease agreement are the city and the church. And who is taking care of the property under that lease, as you understand it?
> A The city helps take care of the grounds of the property, but the church owns it and has ultimate right to handle that property.
> Q So does the church pay the city something to help, as you said, take care of this property?
> A No. I'm not aware of anything as part of that lease. They may have done something at the beginning of that. I'm not aware of that.
> Q Okay. As part of this lease, does the church – is there any exchange of compensation as part of this lease?
> A Not on a regular basis.
> Q Okay. In what context is there some exchange of compensation?

2

      A I don't think there is an exchange of compensation.
      Q So if you were to try to summarize the main terms of this lease agreement -- the main terms, what would those be?
      A The church allows the city to use that property for baseball fields and other city activities, sports, soccer, baseball, those kind of things.
      Q Is that why -- sorry. I apologize. Go ahead.
      A Sorry. In return I would say that the city takes care of the property.[1]

REDIRECT EXAMINATION BY MR. MYLAR:

      Q On the lease that you were talking about with the city, is it also the case that if it's a religious use of the property, that the church has exclusive use of that land?
      A Yes. That's a good point. The church has exclusive say and use as to what ultimately happens with that land, overriding the city in every aspect.
      Q But would that be particularly true on a religious holiday, events like this was?
      MS. PORTER: Objection as to leading.
      THE COURT: Overruled. You can answer.
      THE WITNESS: Especially that day more than any other day.
      BY MR. MYLAR:
      Q Especially that day that the church was in charge of the property?
      A Correct.[2]

RECROSS-EXAMINATION BY MS. PORTER:

      Q I think I just want a little more information about that lease agreement. What year did you say that was entered into?
      A I believe 2009. I may have to find that lease if it's pertinent.
      Q Oh, start looking.
      A I do have it. I don't feel that it's pertinent.
      Q You know what? We'll probably just end up arguing about it and then the Judge will make a ruling one way or the other. But I can tell you the request is coming.
      A All right. I would suit yourself, yes.
      Q Well, and it is a lease with a governmental entity, correct?
      A I can't say any more because I don't remember the details, honestly.[3]

---

[1] *See* ECF 55-1, Motion for preliminary Injunction Hearing Conducted via Zoom, 131:2–132:7.
[2] *Id.* at 136:3–18.
[3] *Id.* at 136:24–137:14.

The lease itself is now available, and is better evidence that Mr. Smith's (understandable) inability to remember details.[4] *Inter alia*: The lease is a 20-year "arms-length transaction" leasing the entire park to the City for "secular" purposes, not to "be construed as [City's] endorsement… or other advancement of any religious belief, faith, or non-secular institution."[5] The city ("Tenant") pays the Church ("Landlord") $1 per year plus utilities, governmental fees and taxes, etc., and provides insurance.[6]

Under the lease, the City is to use the space "for open landscaped space, including the placement, installation, and maintenance of grass, trees, landscaped areas, baseball field and related improvements, sidewalks, benches, and a playground to be used as a family/children environment by permitted employees, guests and invitees of the City[.]"[7]

The Church ("Landlord") has "the first right to reserve the right to use any or all portions of the Premises[.]"[8] However, it is required to contact the Beaver City Recreation Director in order to do so.[9] "During the period of Landlord's exclusive use [of] the Premises, Landlord reserves the right to use the Premises for assembly, erecting signs or displays, and for the use of loudspeakers or other devices to project music, sound or spoken messages, which activities do not need to be content neutral or viewpoint neutral."[10] In response to a request in the infraction case for evidence that the Church had contacted the Beaver City Recreation

---

[4] *See* Exh. A hereto.
[5] *Id.*, p. 1, ¶¶ 1-2; p. 11 ¶¶ 30, 32.
[6] *Id.*, p. 2 ¶ 3; p. 5 ¶ 9; p. 6 ¶ 10; p. 7 ¶ 14;
[7] *Id.*, p. 2, 5(a).
[8] *Id.*, p. 3 ¶ 5(c).
[9] *Id.*, p. 3 ¶ 5(c).
[10] *Id.*, p. 3 ¶ 5(c).

Director to reserve the park on July 23, 2022, no such evidence was produced.

## CONCLUSION

For the reasons set forth above, Plaintiffs request that the Court include Exhibit A (the lease agreement) in the record.

DATED this 15th day of December, 2022.

                                              CHRISTENSEN & JENSEN, P.C.

                                              /s/ Anna P. Christiansen
                                              Karra J. Porter
                                              Anna P. Christiansen
                                              *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of December, 2022, a true and correct copy of the foregoing **PLAINTIFFS' MOTION TO SUPPLEMENT RECORD WITH LEASE AGREEMENT** was electronically transmitted and served upon the following:

    Frank D. Mylar
    Andrew R. Hopkins
    MYLAR LAW, P.C.
    2494 Bengal Blvd.
    Salt Lake City, Utah 84121
    office@mylarlaw.com

                                              /s/ Natalie Jackson