IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UTAH ANIMAL RIGHTS COALITION, a non-profit corporation; DIRECT ACTION EVERYWHERE SF BAY AREA, an unincorporated association; CURTIS A. VOLLMAR, an individual; ALEXANDER J. TAYLOR, an individual; and MAXWELL J. CORWIN, an individual,<br><br>   Plaintiffs,<br><br>v.<br><br>BEAVER COUNTY, a political subdivision; CAMERON NOEL, an individual; WARREN G. WOOLSEY, an individual; and LONNIE LAWS, an individual,<br><br>   Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFFS' MOTION TO SUPPLEMENT THE RECORD, DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION, AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND STAY**<br><br>Case No. 2:22-cv-00497-JNP-DBP<br><br>District Judge Jill N. Parrish |

Before the court are three motions. First is a motion for a preliminary injunction filed by Utah Animal Rights Coalition ("UARC"), Direct Action Everywhere SF Bay Area ("DXE"), Curtis A. Vollmar ("Mr. Vollmar"), Alexander J. Taylor ("Mr. Taylor"), and Maxwell J. Corwin ("Mr. Corwin") (collectively "Plaintiffs"). Plaintiffs request that the court enjoin Beaver County, Cameron Noel, Warren G. Woolsey, and Lonnie Laws (collectively "Defendants") from (1) preventing Plaintiffs from engaging in protected speech on public property, (2) harassing or citing Plaintiffs while engaged in protected speech on public property, unless and only to the extent that Plaintiffs are otherwise committing a public offense, and (3) ordering Plaintiffs not to film public officials while on duty or on public property. ECF Nos. 3, 52-1. Second is a motion filed by

Defendants requesting that the court (1) dismiss Mr. Vollmar's claim for equitable relief and stay Mr. Vollmar's claim for damages pending a Beaver County Justice Court criminal proceeding, and (2) stay the remaining Plaintiffs' claims. ECF No. 46. The court held an evidentiary hearing on the preliminary injunction motion on October 12, 2022. Third is a motion filed by Plaintiffs requesting to supplement the record for the preliminary injunction with the lease agreement referenced during the evidentiary hearing. ECF No. 59.

The court GRANTS Plaintiffs' Motion to Supplement the Record with the Lease Agreement. ECF No. 59. The court DENIES Plaintiffs' Motion for a Preliminary Injunction. ECF No. 3. The court GRANTS in part and DENIES in part Defendants' Motion to Dismiss and Stay. ECF No. 46. The court dismisses Mr. Vollmar's claim for equitable relief and stays Mr. Vollmar's claim for damages. The court declines to stay the claims of the Plaintiffs other than Mr. Vollmar.

## FINDINGS OF FACT

1.  Plaintiffs submitted their Motion for a Preliminary Injunction on August 8, 2022. Briefing was completed on September 23, 2022, and the preliminary injunction hearing was scheduled for October 12, 2022. On October 4, 2022, Defendants filed their Motion to Dismiss and Stay under the *Younger* abstention doctrine. ECF No. 46. At the time the preliminary injunction hearing was held, the *Younger* issue had not been fully briefed.

2.  Plaintiffs Curtis A. Vollmar and Alexander J. Taylor are members of Direct Action Everywhere ("DXE") and were members on July 23, 2022. Tanner Decl. Ex. D, at 2, ECF No. 43-2. Plaintiff Maxwell J. Corwin is a member of Utah Animal Rights Coalition ("UARC") and was a member on July 23, 2022. Beckham Decl. Ex. J, at 2, ECF No. 43-8.

3.  On July 23, 2022, Mr. Vollmar and Mr. Taylor were performing outreach efforts in Beaver County, Utah on behalf of DXE. Tanner Decl. Ex. D, at 2, ECF No. 43-2. Mr. Corwin joined

them on behalf of UARC. Beckham Decl. Ex. J, at 2, ECF No. 43-8. They were joined by other members of both organizations who are not individual parties in this lawsuit.

4. On October 12, 2022, the court held an evidentiary hearing on the motion for a preliminary injunction. Defendants called Mr. Chris D. Eyre, Mr. Brent Blackner, Ms. Evelyn Jensen, Mr. Paul Wolden, Ms. Candace Smith, Ms. Carolyn Anderson, Mr. Matthew Robinson, Deputy Tyler Schena, Deputy Lonnie Laws, Deputy Warren Woolsey, Dr. Lance Smith, and Sheriff Cameron Noel to testify. ECF No. 49.

5. July 24 is a holiday in Utah known as Pioneer Day. On July 23, 2022, the Church of Jesus Christ of Latter-day Saints (the "Church") organized a Pioneer Day celebration in Main Street Park (the "Park") in Beaver County, Utah.

6. The court does not find it necessary to resolve the forum status of the Park at this stage of the proceedings.

7. Mr. Brent Blackner is the chairperson of the Beaver Pioneer Days celebration. Mr. Blackner is the contact person listed on the event flyers. Compl. at 7. Prior to the celebration, on July 5, 2022, Mr. Vollmar called Mr. Blackner and allegedly asked about the proper procedure for setting up a booth in the Park during the Pioneer Day celebration. Pls.' Reply at 2, ECF 42. Mr. Vollmar alleges that Mr. Blackner told Mr.Vollmar that Mr. Vollmar could set up a booth in the Park next to the Boy Scouts Building. However, Mr. Blackner disavows granting Mr. Vollmar permission to set up a booth in the Park. Blackner Test., ECF No. 32. Mr. Blackner testified that during the phone conversation, Mr. Blackner was under the impression that Mr. Vollmar was part of a group associated with the University of Utah that wanted to conduct a survey in the Park during the Pioneer Day Celebration. Hr'g Tr. 47:17–

48:4. Mr. Blackner informed the Plaintiffs that they could not set up in the Park, but that they could attend the event. Hr'g Tr. 55:6–56:4.

8. On July 23, 2022, Plaintiffs set up a table and conducted outreach efforts in the Park. Plaintiffs wanted to raise awareness regarding the upcoming "Smithfield trial." Smithfield Foods is a local pig farm that employs most of the residents in Beaver County. At the time of these events, Smithfield Foods had announced that it was closing its facility in Beaver County, and as a result, many Beaver County residents would lose their employment. The "Smithfield trial" referred to a state criminal case that was pending at the time and scheduled to be conducted in Beaver County. Two DXE organizers had been charged with felony burglary and misdemeanor theft for breaking into a Smithfield facility and taking two piglets. Community members were upset by the impending closure and attributed Smithfield's decision to close, in part, to the efforts of the animal rights activists.

9. Plaintiffs engaged in the following outreach approach. First, Plaintiffs would ask a passerby if the passerby had heard about the "Smithfield trial." If the passerby declined to respond or indicated a reluctance to talk, then Plaintiffs walked away. If the passerby responded, then Plaintiffs would offer a flyer and attempt to discuss the matter further. *See* Video Recording Curtis Vollmar Outreach Discussion, Ex. A; Officer Laws Body Camera, Ex. N at 7:42–14:04.

10. Several witnesses testified that they had told the activists to leave the Park. Ms. Evelyn Jensen testified that she had told the activists to stop harassing people in the Park and to leave. Hr'g Tr. 64:8–65:11. Ms. Candance Smith testified that a man wearing all black with tattoos on his arms and a hat had approached her in the Park and asked her to sign a petition.

Hr'g Tr. 79:2–79:9. Ms. Smith told the man that she disagreed with his viewpoints and then asked Deputy Cody Black to intervene. Hr'g Tr. 79:12–80:24.

11. Dr. Lance Smith, who serves as Stake President for the Church in Beaver County, testified that he had approached Plaintiffs in the Park and asked them to take down their canopy as they had not received authorization to set up in the Park. Hr'g Tr. 125:11–130:22. Mr. Matthew Robinson, who serves as Mayor of Beaver City, testified that he witnessed Dr. Smith tell the activists that they needed to leave the Park. Although the activists were reluctant to leave, the interaction was calm. Mr. Robinson then called Officer Tyler Schena to escort the activists out of the Park. Hr'g Tr. 95:21–99:12.

12. Officer Tyler Schena testified that he told several activists that they had to leave the Park because the Park is private property. Officer Schena initially told the activists that they could move to property owned by the post office, but later directed the activists to move to a public area between the post office and the library. Officer Schena accompanied the activists to the new area and testified that he did not encounter any other problems with the group after they had moved. Hr'g Tr. 102:3–104:4; Video Recording Curtis Vollmar Speaking with Deputy Schena, Ex. I, 0:10–0:20, ECF No. 43-7.

13. All interactions between Plaintiffs and Defendants after Plaintiffs left the Park occurred on public property.

14. Mr. Vollmar walked to the intersection of Center Street and Main Street and continued to approach passersby. Beaver County Sheriff's Office Incident Report, Ex. G, at 4, ECF No. 43-5.

15. Deputy Woolsey approached Mr. Vollmar at the intersection and told Mr. Vollmar that Mr. Vollmar needed to stop his outreach efforts because Mr. Vollmar did not have a permit.

Curtis Vollmar Speaking with Warren Woolsey and Lonnie Laws Part 2, Ex. C at 0:01–2:15. Mr. Vollmar responded that he was standing on the sidewalk, which is public property, and that he did not need a permit to talk to people from a public sidewalk. Ex. C at 0:36.

16. Deputy Woolsey repeatedly told Mr. Vollmar that he was causing a problem in the community and requested that Mr. Vollmar leave. Ex. C at 0:18–22.

17. Mr. Vollmar replied, "[a]ll of this for handing out some flyers." Ex. C, 1:03. Deputy Woolsey responded, "[n]o, all of this because your group has been a direct influence on shutting down Smithfield foods. . . . You come into this community, and you pour salt into the wounds of people that have lost their jobs . . . . You are causing a disturbance in the community." Ex. C 1:04–57.

18. Deputy Lonnie Laws arrived at around 1:20 p.m. *See* Ex. G. at 3, ECF No. 43-5.

19. Both Plaintiffs and Defendants recorded the interaction between Plaintiffs, Deputy Woolsey, and Deputy Laws.

20. A volunteer law enforcement officer who was standing behind Mr. Vollmar told Mr. Vollmar that he did not consent to being filmed. Ex. C at 1:58. Deputy Laws ordered Mr. Vollmar to stop filming the volunteer and warned Mr. Vollmar that failure to comply with a lawful police order is a crime. Ex. C at 2:32–2:41. Plaintiffs stopped recording the volunteer.

21. Mr. Vollmar continued to ask passersby about the Smithfield trial, Ex. C at 2:52–2:59, and Deputy Woolsey again told Mr. Vollmar, that Mr. Vollmar needed a permit to approach people. Ex. C at 2:55. Mr. Vollmar reasserted that he did not need a permit to talk to people from a public sidewalk. Ex. C at 3:03.

22. Deputy Woolsey announced that "these are the people who are trying to shut down Smithfield" to passersby and accompanied Mr. Vollmar as Mr. Vollmar walked down the sidewalk. Ex. C at 4:00–4:36.

23. Mr. Vollmar and a rancher had a calm conversation about the Smithfield trial despite the rancher disagreeing with Mr. Vollmar's views. Ex. N at 7:42–14:04.

24. After the conversation between Mr. Vollmar and the rancher ended, Deputy Woolsey told Plaintiffs that they had breached the peace by failing to obey his orders to stop. Deputy Woolsey informed Plaintiffs that he would cite them for disorderly conduct if they continued their outreach efforts. Ex. N at 13:58–14:35.

25. As part of the citation procedure, Deputy Laws accompanied Mr. Taylor and Mr. Corwin to retrieve their identification cards. Ex. N at 14:50–23:26.

26. Deputy Woolsey then cited Mr. Vollmar for disorderly conduct. Citation, Ex. O. Deputy Woolsey told Plaintiffs that he would arrest them if they did not desist. Ex. N at 26:06.

27. Deputy Woolsey told Mr. Taylor and Mr. Corwin that, unlike Mr. Vollmar, they would not be cited because they obeyed his order and stopped. Officer Woolsey Body Camera, Part 3 Ex. M at 6:32–7:36 ("When I asked you [Mr. Corwin and Mr. Taylor] to stop you did . . . this guy [Mr. Vollmar] didn't . . . I am not intending to cite you [Mr. Corwin and Mr. Taylor]. This guy [Mr. Vollmar] didn't [stop]. That's why he is getting a ticket.").

28. Deputy Woolsey then informed Plaintiffs that they needed to obtain a permit from the city prior to conducting outreach efforts on public property, Ex. M at 9:51–10:18, and that Plaintiffs should refrain from spreading their message at the horse races for their own safety. Ex. M at 12:00.

29. Deputy Laws warned Plaintiffs that they would be arrested if they attempted to conduct outreach efforts at the horse races. Ex. N at 43:10–44:55 ("You can go up there and observe and have fun all you want. As soon as you bring up the issue, you will be arrested. Because you're wasting my time coming and dealing with this stupid issue").

30. Mr. Vollmar asked Defendants if they realized that they were violating Plaintiffs' First Amendment rights. Ex. M at 13:56. Deputy Woolsey acknowledged the First Amendment concern but insisted that the content of the Plaintiffs' communications upset the community. Ex. N at 15:00–15:31.

31. Sheriff Noel testified that Mr. Vollmar was given a disorderly conduct citation for trespassing on the Park and harassing Beaver County citizens. Hr'g Tr. 496:8–496:25 (explaining that Mr. Vollmar was cited "[b]ecause he would not comply with our orders to not trespass and to quit harassing our citizens." They were shut down for their speech "not when they were on public [property]."). However, his explanation is inconsistent with the video evidence.

32. Mr. Vollmar is currently facing a disorderly conduct charge in Beaver County Justice Court. *See Beaver City vs. Vollmar*, Case No. 221000130.

## ANALYSIS

### I.   Supplemental Lease Agreement

As a preliminary matter, the court addresses the motion to supplement the record filed by Plaintiffs on December 15, 2022. ECF No. 59. During the evidentiary hearing on October 12, 2022, Defendants alleged that the Park is private property owned by the Church and several witnesses testified that they believed that the Church owns the Park. *See* Hr'g Tr. 44:9–45:7 ("The Church of Jesus Christ of Latter-day Saints owns the property, it is my understanding, and that they have

given permission to the city to hold events on there as long as they are in accordance with the church's policies."); 69:3–69:22; 85:21–85:23. During the hearing, a lease agreement between the City of Beaver and the Church was mentioned, but neither party offered the underlying lease agreement at the time. Hr'g Tr. 131:2–137:14. On December 15, 2022, Plaintiffs filed a motion to supplement the record with the lease agreement and attached a copy of the lease agreement. ECF No. 59. On December 29, 2022, Defendants objected to Plaintiffs' motion to supplement, claiming that the lease agreement is hearsay and irrelevant. ECF No. 61.

The court overrules Defendants' objections and enters the lease agreement into the preliminary injunction record. Defendants' hearsay objection is irrelevant as the motion filed by Plaintiffs clearly states that they are using the lease agreement to impeach the credibility of Dr. Lance Smith, a witness called by Defendants during the evidentiary hearing. *See* ECF No. 59 at 4 ("The lease itself is now available, and is better evidence that Mr. Smith's (understandable) inability to remember details."). Moreover, while the court agrees that the forum status of the Park does not affect the preliminary injunction analysis, Defendants were the ones who initially raised the issue by focusing their argument on the Park and the events that occurred therein. *See* ECF No. 30. After dedicating the evidentiary hearing to claiming that Plaintiffs trespassed on private property, Defendants cannot now assert that the lease agreement is irrelevant. Accordingly, the court GRANTS Plaintiffs' motion to supplement the record and supplements the record with the lease agreement. ECF No. 59.

## II.   *Younger* **Abstention**

This court must address Defendants' *Younger* abstention concern before turning to the matter of the preliminary injunction. If *Younger* applies, the court is precluded from issuing a preliminary injunction on the merits of this case. *See Phelps v. Hamilton*, 122 F.3d 885, 891 (10th Cir. 1997)

(explaining that when *Younger* applies, "the district court must refrain from reaching the merits of the plaintiff's claims") (citation omitted).

Defendants assert that this court must dismiss Mr. Vollmar's claim for equitable relief and stay his claim for damages under the *Younger* doctrine because of the pending disorderly conduct proceeding against Mr. Vollmar. District courts "must dismiss suits for declaratory or injunctive relief against pending state criminal proceedings" unless there are "exceptional circumstances." *Goings v. Sumner Cnty. Dist. Attorney's Off.*, 571 F. App'x 634, 637–38 (10th Cir. 2014) (citation omitted).

"Federal courts are obliged to decide cases within the scope of federal jurisdiction. Abstention is not in order simply because a pending state-court proceeding involves the same subject matter." *Sprint Comm., Inc. v. Jacobs*, 571 U.S. 69, 72 (2013). Although federal courts have a "virtually unflagging obligation" to hear cases where jurisdiction is appropriate, *Colo. River Water Conservation Dist. v. United States,* 424 U.S. 800, 817 (1976), there is a narrow class of cases in which comity considerations and "respect [for] state functions and the independent operation of state legal systems," *Phelps*, 122 F.3d at 889, warrant dismissal.

The Tenth Circuit has held that *Younger* abstention is mandatory when the following three requirements are met. *See Amanatullah v. Colo. Bd. of Med. Exam'rs*, 187 F.3d 1160, 1163 (10th Cir. 1999).

> First, there must be ongoing state criminal, civil, or administrative proceedings. Second, the state court must offer an adequate forum to hear the federal plaintiff's claims from the federal lawsuit. Third, the state proceeding must involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies.

*Goings*, 571 F. App'x at 637–38; *Crown Point I, LLC v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1215 (10th Cir. 2003).[1]

The court agrees with Defendants that *Younger* abstention applies and mandates that the court dismiss Mr. Vollmar's claim for equitable relief. The first requirement of an ongoing state criminal proceeding is satisfied because the criminal charge of disorderly conduct against Mr. Vollmar is currently pending before the Beaver County Justice Court. *See Beaver City v. Vollmar*, Case No. 221000130. The disorderly conduct offense in that proceeding arose from the citation that Deputy Woolsey issued on July 23, 2022. The third requirement is also met because "[t]he State of Utah has an important interest in its criminal proceedings." *Buck v. Myers*, 244 F. App'x 193 at 197 (10th Cir. 2007). Even though a disorderly conduct charge is classified as an infraction and the maximum penalty is capped at a fine of $750, it is still classified as a criminal violation. *See Perez v. City of Culver City*, No. CV 20-9964 DSF (RAOx), 2021 WL 9165642 (C.D. Cal. Feb. 25, 2021) (applying *Younger* and staying federal proceedings until the underlying traffic infraction was resolved).

---

[1] Plaintiffs assert that post *Sprint*, 571 U.S. 69, these three factors are no longer solely dispositive of whether *Younger* abstention applies. However, the court is not convinced that *Sprint* is applicable. *Sprint* clarified that *Younger* abstention is the "exception, not the rule" when the pending state proceeding is not a "state criminal prosecution[], civil enforcement proceeding[] [,or a] civil proceeding[] involving certain orders that are uniquely in furtherance of the state court's ability to perform their judicial functions." *Sprint*, 571 U.S. 69, 82 (quoting *Colo. River*, 424 U.S. at 813). Here, there is a pending state criminal prosecution and *Sprint* expressly noted that "*Younger* exemplifies one class of cases in which federal-court abstention is required: When there is a parallel, pending state criminal proceeding." *Sprint*, 571 U.S. at 72. Plaintiffs cite *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 Fed. Appx. 752 (10th Cir. 2020) for the proposition that federal courts should only abstain when their action would effectively enjoin the state court proceedings, but *Sefcovic* is inapplicable to the facts here because *Sefcovic* is cabined to the third category of "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint*, 571 U.S. at 73 (citation omitted).

Plaintiffs assert that justice court is an inadequate forum because the justice court cannot provide Mr. Vollmar with the remedy he requests, which is an injunction enjoining Defendants from violating Mr. Vollmar's free speech rights. However, in determining the adequacy of the state forum, the "pertinent issue is whether [federal] claims could have been raised in the pending state proceedings." *Moore v. Sims*, 442 U.S. 415, 425 (1979); *see J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1291 (10th Cir. 1999); *Winn v. Cook*, 945 F.3d 1253, 1258 (10th Cir. 2019) ("unless state law clearly bars the interposition of the federal statutory and constitutional claims," a plaintiff typically has "an adequate opportunity to raise federal claims in state court") (internal citation omitted). The court is persuaded that justice court is an adequate forum to hear Mr. Vollmar's constitutional claims.

Plaintiffs have not met the burden of showing that the constitutional claims cannot be raised in justice court. Plaintiffs assert that justice court is an inadequate forum because "the justice court is not a court of record[,] [t]here is no special verdict form, and there is no requirement (nor would it be customary) for the justice court judge to issue findings on constitutional issues." Pls.' Resp. at 8. However, justice courts are authorized and governed by the Utah Constitution. Utah Code Ann. §§ 78A-7-101. The state of Utah has adopted a two-tier justice court system to handle criminal matters. *See Bernat v. Allphin*, 106 P.3d 707, 710-718 (Utah 2005). The court declines to rule that justice courts are an inadequate forum on these grounds as "[m]inimal respect for the state processes, of course, precludes any presumption that the state courts will not safeguard federal constitutional rights." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982). "The Utah state judiciary provides an adequate forum for [a plaintiff] to assert his constitutional claims." *Weitzel v. Div. of Occupational & Prof'l Licensing*, 240 F.3d 871, 876 (10th Cir. 2001); *see Ellis v. Morzelewski*, No. 2:21-CV-639-TC, 2022 WL 3645850, at *6 (D. Utah Aug.

24, 2022) (holding that plaintiff could assert his Fourth Amendment argument in justice court). Because all three requirements have been met, *Younger* abstention is mandatory.

Plaintiffs assert that *Younger* abstention does not apply because they are requesting that the court provide them with injunctive relief that protects their ability to engage in free speech, and are not asking that the court enjoin the state level criminal prosecution against Mr. Vollmar. However, *Younger* abstention does not only apply to circumstances where a plaintiff asks the court to enjoin a judicial proceeding; it also applies if "[a] finding in this case that the defendants violated [Plaintiff's] constitutional rights would have a preclusive effect on state-court proceedings." *Buck*, 244 F. App'x at 197–98 (holding that a finding by the district court that plaintiff should be awarded damages for his claims of illegal search and seizure and the improper filing of charges would have preclusive effects on the pending state court proceedings). Here, the alleged First Amendment violation is highly intertwined with the disorderly conduct charge. In fact, the core of Plaintiffs' argument is that Defendants threatened, and later cited Mr. Vollmar for disorderly conduct in order to suppress Plaintiffs' free speech rights. A finding by this court that Defendants violated Plaintiffs' First Amendment rights does not formally preclude the parallel criminal prosecution of the disorderly conduct offense, but given its centrality to Plaintiffs' arguments, it inevitably will have preclusive effects.[2] The purpose of *Younger* abstention is to maintain comity for the state

_____

[2] Defendants assert that Mr. Vollmar was cited for earlier incidents of trespass and harassment of individuals in the Park and not for exercising his First Amendment rights on the public sidewalk. However, this explanation undercuts Defendants' claim that *Younger* abstention should apply to Mr. Vollmar, as a finding that Defendants violated Plaintiffs' First Amendment rights on the sidewalk would not affect a finding of whether Mr. Vollmar was guilty of disorderly conduct earlier on in the Park. However, based on the evidence presented, the court is unpersuaded by Defendants' explanation that the disorderly conduct citation arose from Mr. Vollmar's conduct in the Park.

court system. "[A] federal court must not, save in exceptional and extremely limited circumstances, intervene by way of either injunction or declaration in an existing state criminal prosecution." *Younger v. Harris*, 401 U.S. 37, 56 (1971). To intervene here would undermine these principles of comity set out in *Younger*.

Alternatively, Plaintiffs assert that *Younger* abstention should not apply because Mr. Vollmar's case falls within a *Younger* exception. "The Younger abstention doctrine does not apply 'in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown.'" *Amanatullah*, 187 F.3d at 1165 (10th Cir. 1999) (quoting *Perez v. Ledesma*, 401 U.S. 82, 85 (1971)). Plaintiffs assert that absent bad faith, the City of Beaver would not have criminally prosecuted Mr. Vollmar for the disorderly conduct charge. The court disagrees. In assessing whether a state action was commenced in bad faith, the court considers, "(1) whether it was frivolous or undertaken with no reasonably objective hope of success; (2) whether it was motivated by defendant's suspect class or in retaliation for the defendant's exercise of constitutional rights; and (3) whether it was conducted in such a way as to constitute harassment and an abuse of prosecutorial discretion, typically through the unjustified and oppressive use of multiple prosecutions." *Kabutu v. Short*, No. 21-3229, 2022 WL 3010620, at *2 (10th Cir. 2022) (citation omitted). Parties alleging bad faith generally must satisfy either the first factor, or both the second and third factors. *See Phelps v. Hamilton*, 59 F.3d 1058, 1066 (10th Cir. 1995) (having failed to establish that the prosecutions were undertaken with no reasonably objective hope of success, "Phelps' argument for federal court intervention must rest on his allegations that the prosecutions were commenced in retaliation for the exercise of his constitutional rights and that so many prosecutions were brought as to rise to the level of prosecutorial harassment.").

Plaintiffs have not established that there is no reasonably objective hope of success in Mr. Vollmar's prosecution. It is possible, even if the court finds it implausible, that the justice court may find that Mr. Vollmar's disorderly conduct citation arose from his alleged earlier trespass in the Park. Plaintiffs have also not established the second and third bad faith factors. Even if the court concludes that the body-camera footage demonstrates that Deputy Woolsey cited Mr. Vollmar in retaliation for Mr. Vollmar exercising his right to free speech, Plaintiffs have not established that the manner in which the city of Beaver prosecuted Mr. Vollmar constitutes harassment or abuse of prosecutorial discretion. Plaintiffs have not shown that *multiple* prosecutions were brought. To establish abuse or harassment, Plaintiffs "must demonstrate both the existence of a substantial number of prosecutions and that a reasonable prosecutor would not have brought such multiple charges under similar circumstances." *Ellis*, at *10 (citation omitted). Here, there is only one prosecution. This does not come close to reaching the high bar necessary for a finding of prosecutorial bad faith. *See Phelps*, 122 F.3d at 889 ("In view of the nature of the plaintiffs' protests and activities, we cannot say that [twenty cases against plaintiffs] rises to the oppressive level necessary to trigger the bad faith exception to the *Younger* doctrine"); *Lyons v. Kimmey*, No. 21-1219, 2021 WL 3571362, at *11 (10th Cir. Aug. 19, 2021) (holding that even after taking into consideration plaintiff's allegations of police misconduct, charges against plaintiff for failing to provide proof of insurance and resisting arrest did not rise to bad faith).

In short, because the court is persuaded that the three *Younger* requirements have been met and that no exception applies, *Younger* abstention is mandatory. Therefore, the court dismisses

Mr. Vollmar's claim for equitable relief and stays Mr. Vollmar's claim for damages pending the resolution of the state proceedings against Mr. Vollmar.[3]

Defendants ask the court to stay the remaining Plaintiffs' claims for reasons of judicial economy. The court declines to do so. "A trial court has the inherent power to stay civil proceedings." *Windham for Marquis Properties, LLC v. Snyder*, No. 2:18-cv-00063-RJS-EJF, 2018 WL 4100512, at *2 (D. Utah Aug. 28, 2018). In some cases where *Younger* abstention applies, "legally distinct parties are so closely related that they should all be subject to *Younger* considerations which govern any one of them." *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 928; *see Hicks v. Miranda*, 422 U.S. 332, 349 (applying *Younger* abstention to a claim for declaratory relief by the owners of a movie theater after their employees had been criminally charged with the distribution of obscenity). However, sharing the same political agenda is not sufficient to invoke derivative *Younger* abstention. "It would be unfair to hold [the constitutional rights of a plaintiff who is not facing state criminal charges] hostage to the outcome and timing of . . . criminal court proceedings." *Phelps*, 59 F.3d at 1069. "Requiring the federal courts to step aside when no state criminal prosecution is pending against the federal plaintiff would turn federalism on its head." *Steffel v. Thompson*, 415 U.S. 452, 472 (1974).

Unlike Mr. Vollmar, Mr. Corwin and Mr. Taylor do not have the opportunity to defend their constitutional rights in a pending state criminal proceeding. Mr. Corwin and Mr. Taylor's injuries are not "imaginary or speculative." *Steffel*, 415 U.S. at 459. Deputy Woolsey and Deputy Laws

---

[3] As an alternative, Defendants asked the court to stay the claim for damages by Mr. Vollmar due to a potential *Heck* bar. The court does not need to reach a decision on whether the *Heck* bar applies, as under *Younger*, the court must stay the claim for damages by Mr. Vollmar pending the resolution of the state case.

threatened to cite and arrest Mr. Corwin and Mr. Taylor. Furthermore, judicial economy does not warrant a stay. The court has already reviewed the parties' briefs, video recordings, and affidavits, and conducted a day-long hearing on the motion for a preliminary injunction. Therefore, the court declines to stay the case for the remaining Plaintiffs.

## III.   Preliminary Injunction

Having held that *Younger* abstention does not apply to Mr. Taylor, Mr. Corwin, UARC, and DXE's claims for equitable relief, the court now addresses the remaining Plaintiffs' Motion for a Preliminary Injunction.

To obtain a preliminary injunction, the moving party must establish: "(1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." *Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007). "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted); *accord Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005) ("As a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal.") (citation omitted).

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Awad v. Ziriax*, 670 F.3d 1111, 1131 (10th Cir. 2012) ("When an alleged constitutional right is involved, most courts hold

no further showing of irreparable injury is necessary.")[4] The alleged harm Plaintiffs face, losing

their First Amendment right to free speech, substantially outweighs any harm an injunction

enjoining Defendants from infringing on these rights would cause Defendants. Furthermore,

"[v]indicating First Amendment freedoms is clearly in the public interest." *Pac. Frontier v.

Pleasant Grove City*, 414 F.3d 1221, 1237 (10th Cir. 2005). Therefore, in a case turning on a First

Amendment violation like this one, "the likelihood of success on the merits will often be the

determinative factor because of the seminal importance of the interests at stake." *Verlo v. Martinez*,

820 F.3d 1113, 1126 (10th Cir. 2016) (citation omitted).

In determining Plaintiffs' likelihood of success on the merits, the court first addresses the issue

of standing. Defendants assert that the Plaintiffs lack standing because they did not suffer any

actual or threatened injury. Plaintiffs stated that they have refrained from returning to Beaver

County because they are concerned that they will be cited if they do return. Obj. Defs.' Proposed

Order at 3, ECF No. 54. Defendants assert that the Plaintiffs are free to return to Beaver County

and that if they do return and engage in outreach efforts, Defendants will not infringe on their First

Amendment rights. Defs.' Post-Hr'g Mem. Pls.' Mot. Preliminary Inj. at 2, ECF No. 56. To support

their assertion, Defendants point out that on October 5, and October 22, Plaintiff organization DXE

carried out two protests in Beaver County without issue. However, the court is unpersuaded that

this indicates that Plaintiffs have not suffered a threatened injury. Mr. Vollmar currently faces

---

[4] Defendants assert that a preliminary injunction is no longer necessary because Plaintiffs initially
requested a preliminary injunction to raise awareness about the Smithfield trial, and the trial has
already concluded. The court disagrees. Even though Plaintiffs acknowledge that they initially
requested the preliminary injunction for the purpose of protesting in Beaver County prior to the
trial, limitations on free speech even in the absence of a pending trial constitute irreparable harm.
Plaintiffs testify that they plan to return to Beaver County, but have not done so out of fear that
they will be harassed by Defendants. Obj. Defs.' Proposed Order at 3, ECF No. 54.

criminal prosecution and during the October 12 hearing, the Defendants refused to stipulate that they would not infringe on Plaintiffs' First Amendment rights. In *Steffel*, the Supreme Court held that the petitioner had standing because "[t]he prosecution of petitioner's handbilling companion is ample demonstration that petitioner's concern with arrest has not been 'chimerical.' In these circumstances, it is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Steffel*, 415 U.S. at 459 (quoting *Poe v. Ullman*, 367 U.S. 497, 508 (1961)). The determination of whether Plaintiffs have standing is less clear here than in *Steffel* because, in this case, Defendants have not stipulated that Plaintiffs will be prosecuted if they return to Beaver County and engage in outreach efforts. Although the question of standing is closer here, the combination of the actual prosecution of Mr. Vollmar and the threatened prosecution of Mr. Taylor and Mr. Corwin on July 23 persuades the court that Plaintiffs have standing.

Having addressed the issue of standing, the court turns to whether Plaintiffs have demonstrated a likelihood of success on the merits. The court is persuaded that Plaintiffs are substantially likely to be able to demonstrate that Defendants violated Plaintiffs' First Amendment rights. The facts of the case are very similar to *Cantwell v. State of Connecticut*, 310 U.S. 296 (1940). In *Cantwell*, Jesse Cantwell was charged with inciting others to breach the peace for playing a recording in a public street that affronted passersby. One passerby testified that "he felt like hitting Cantwell and the other that he was tempted to throw Cantwell off the street." *Id.* at 309. The Supreme Court held that "a state may not unduly suppress free communication of views . . . under the guise of conserving desirable conditions." *Id.* at 308.

> Although the contents of the record not unnaturally aroused
> animosity, we think that, in the absence of a statute narrowly drawn

> to define and punish specific conduct as constituting a clear and
> present danger to a substantial interest of the State, the petitioner's
> communication, considered in the light of the constitutional
> guarantees, raised no such clear and present menace to public peace
> and order as to render him liable to conviction of the common law
> offense in question.

*Id.* at 311.

Like Mr. Cantwell, Plaintiffs were engaged in protected free speech. Plaintiffs were peacefully

handing out flyers and engaging passersby in one-on-one conversations, which are "classic forms

of speech that lie at the heart of the First Amendment." *Schenck v. Pro-Choice Network of W. New*

*York*, 519 U.S. 357, 377 (1997); *see McCullen v. Coakley*, 473 U.S. 464 (2014). Plaintiffs were on

a public sidewalk corner, which is a traditional public forum. *Schenck*, 519 U.S. at 377. Speech

restrictions in a traditional public forum must be content neutral and are subject to strict scrutiny.

*Verlo*, 820 F.3d at 1129. Strict scrutiny requires that "the restriction must be narrowly tailored to

serve a compelling government interest." *Pleasant Grove City, Utah v. Summum*, 55 U.S. 460, 469

(2009) (citation omitted). Defendants threatened Plaintiffs with citation and arrest for disorderly

conduct, a type of breach of the peace offense, if Plaintiffs did not stop expressing their views. *See*

Ex. C at 1:04–57 ("You come into this community, and you pour salt into the wounds of people

that have lost their jobs.").

Defendants allege that Deputy Woolsey and Deputy Laws threatened to cite Plaintiffs for prior

harassment and trespassing complaints that occurred while Plaintiffs were in the Park, and not for

the Plaintiffs' outreach efforts on the public sidewalk. But the court is unconvinced. First, while

witnesses testified that there were multiple animal rights protestors in the Park, the witnesses could

not convincingly identify Plaintiffs.[5] Neither Deputy Woolsey nor Deputy Laws interacted with Plaintiffs while they were in the Park. The body camera shows that the officers did not mention either the Park or trespassing during the nearly hourlong interaction. Officer Woolsey Body Camera Part 1, Ex. K; Officer Woolsey Body Camera Part 2, Ex. L; Officer Woolsey Body Camera Part 3, Ex. M; Officer Laws Body Camera, Ex. N. Furthermore, Deputy Woolsey told Mr. Corwin and Mr. Taylor that they were not being cited because unlike their friend, they stopped their outreach efforts when asked. Ex. M at 6:00–7:15 ("When I asked you [Mr. Corwin and Mr. Taylor] to stop you did . . . this guy [Mr. Vollmar] didn't . . . I am not intending to cite you [Mr. Corwin and Mr. Taylor]. This guy [Mr. Vollmar] didn't [stop]. That's why he is getting a ticket."). The court is persuaded that Plaintiffs can demonstrate a substantial likelihood that Deputy Woolsey and Deputy Laws violated Plaintiffs' First Amendment rights.

However, to obtain a preliminary injunction, Plaintiffs bear the burden not only of showing the violation of their constitutional rights, but also that the violation was not an isolated incident. And here, Plaintiffs have not shown that Beaver County or the Sheriff's Office implemented an unconstitutional policy. Plaintiffs argue that their injury arises from the violation of their First Amendment rights by Deputy Woolsey and Deputy Laws. However, "[i]solated incidents of police misconduct under valid statutes would not, of course, be cause for the exercise of a federal court's equitable powers." *Allee v. Medrano*, 416 U.S. 802, 815 (1974). To receive injunctive relief, Plaintiffs must show "a persistent pattern of police misconduct." *Id.* Plaintiffs have not met this burden. Plaintiffs have only alleged one incident of Defendants infringing upon their First

---

[5] Only one witness, Ms. Candace Smith, identified Mr. Vollmar through his tattoos. However, this identification is irrelevant because the court has dismissed Mr. Vollmar's claim for equitable relief under the *Younger* doctrine.

Amendment rights. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 104 (1983) ("plaintiffs' showing at trial of a relatively few instances of violations by individual police officers, without any showing of a deliberate policy on behalf of the named defendants, did not provide a basis for equitable relief.") Therefore, the court denies Plaintiffs' request for a preliminary injunction.[6]

## ORDER OF THE COURT

The court ORDERS as follows:

1. Plaintiffs' motion to supplement the record is GRANTED. ECF No. 59.

2. Plaintiffs' motion for a preliminary injunction is DENIED. ECF No. 3.

3. Defendants' motion to dismiss and stay is GRANTED in part and DENIED in part. ECF No. 46.

    a. The motion to dismiss the equitable claims and stay the § 1983 damage claims of Plaintiff Curtis A. Vollmar is GRANTED.

    b. The motion to stay the claims of plaintiffs Alexander J. Taylor, Maxwell J. Corwin, Utah Animal Rights Coalition, and Direct Action Everywhere SF Bay Area is DENIED.

DATED March 24, 2023.

BY THE COURT

---

[6] Defendants also assert that a preliminary injunction against Beaver County would be inappropriate because municipalities are not liable for one-time instances of employee misconduct, *see Connick v. Thompson*, 563 U.S. 51 (2011), Plaintiffs cannot demonstrate that Sheriff Noel ratified Deputy Laws and Deputy Woolsey's behavior, and Deputy Woolsey and Deputy Laws lack final policy-making authority. Because the court has already denied the preliminary injunction on other grounds, it does not address these claims.

Jill N. Parrish
United States District Court Judge